UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHNNY IM,<br><br>                          Plaintiff,<br><br>            -v-<br><br>BAYVIEW LOAN SERVICING LLC et al.,<br><br>                         Defendants. | 16-CV-634 (JPO)<br><br>OPINION AND ORDER |

J. PAUL OETKEN, District Judge:

Plaintiff Johnny Im brings this action against Defendants Bayview Loan Servicing LLC ("Bayview"), Federal Home Loan Mortgage Corporation as Trustee for Freddie Mac Multiclass Certificates Series 3370 ("FHLM"), and Does 1 through 100, for claims arising out of Defendants' handling of Plaintiff's mortgage. Defendants move to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. For the reasons that follow, the motion is granted in part and denied in part.

**I.     Background**

The following facts are taken from the Second Amended Complaint (Dkt. No. 34-1 ("Compl.")) and exhibits attached to Plaintiff's original complaint (Dkt. Nos. 1-1 ("Aff."), 1-2).[1]

In September 2007, Plaintiff Johnny Im purchased a property in Lowell, Massachusetts with a mortgage loan originated by Washington Mutual Bank in the amount of $276,500. (Compl. ¶ 10.) Plaintiff was laid off from his job in May 2009 and subsequently fell behind on

---

[1] The Court does not consider allegations contained in Plaintiff's prior two complaints (Dkt. Nos. 1 & 26), because those pleadings have been superseded by the Second Amended Complaint. However, because the Second Amended Complaint references exhibits attached to the original complaint, the Court construes the Second Amended Complaint as re-alleging the facts contained therein.

his loan payments. (Aff. ¶¶ 5–6.) Plaintiff received notice in March 2015 that he had been assigned an "Asset Manager" from the loan servicer Bayview Loan Servicing LLC (Compl. ¶ 20; Aff. ¶ 4), and sometime thereafter Plaintiff became aware[2] that Bayview had scheduled a foreclosure sale for September 10, 2015 (Compl. ¶ 21).

Between the loan's origination in September 2007 and Bayview's scheduled foreclosure sale in September 2015, Plaintiff's note and mortgage were transferred between several different entities. (Compl. ¶¶ 12–18.) Plaintiff alleges, however, that Defendants "fail[ed] to disclose the[se] various transfers and assignments." (Compl. ¶ 23.) Furthermore, based on a "securitization analysis report" authored by Certified Forensic Loan Auditors, LLC, Plaintiff alleges that Bayview "was not the holder of the note or authorized agent of the note holder" (Compl. ¶ 53), and as a result it did not have "the ability to conduct a sale of the property" (Compl. ¶ 45).

Plaintiff filed this action on January 28, 2016 (Dkt. No. 1), and twice amended his complaint. The operative complaint alleges claims for: (1) violations of the Truth in Lending Act for failure to disclose to Plaintiff the various assignments and transfers of his note and mortgage (Compl. ¶¶ 26–37); (2) violations of the Fair Debt Collection Practices Act for making "false, misleading, and deceptive" statements and "[u]sing unfair and unconscionable means to collect or attempt to collect on a debt" (Compl. ¶¶ 38–46); and (3) violations of Chapter 244 of

---

[2] It is not clear from the Complaint when and how Plaintiff learned of the foreclosure sale. On the one hand, Plaintiff alleges that Bayview "purported to send" him a Notice of Foreclosure Sale and a Notice of Mortgagee's Sale of Real Estate on August 11, 2015, but that he did not discover these notices until he received the results of an independent "loan audit" on September 8, 2015. (Compl. ¶ 21.) On the other hand, Plaintiff's claim for relief under the Fair Debt Collection Practices Act alleges that Defendants "sen[t] the Plaintiff a Notice of Sale" which "caus[ed] the Plaintiff to believe that Bayview had the ability to conduct a sale of the property." (Compl. ¶¶ 38–46.)

Massachusetts General Laws (Compl. ¶¶ 47–59). Plaintiff seeks damages and attorney's fees for these alleged violations, but the Complaint does not request injunctive relief in connection with the foreclosure action itself. (Compl. at 12–13.)

Defendants now move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of standing and under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (Dkt. No. 39.)

## II. Legal Standard

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). When considering a motion to dismiss for lack of subject matter jurisdiction, a federal court "must accept as true all material factual allegations in the complaint . . . [b]ut . . . jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). "When resolving a Rule 12(b)(1) motion, a district court may refer to evidence outside the pleadings . . . ." *Morrow v. Ann Inc.*, No. 16 Civ. 3340, 2017 WL 363001, at *2 (S.D.N.Y. Jan. 24, 2017) (citing *Makarova*, 201 F.3d at 113).

In contrast, when considering a motion to dismiss under Rule 12(b)(6), courts "must accept as true all of the factual allegations contained in the complaint," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007) (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n.1 (2002)), and must draw "all inferences in the light most favorable to the non-moving party[]," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (Sotomayor, J.). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

3

(quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When considering a motion to dismiss under Rule 12(b)(6), a court may "look[] only to the complaint; documents that are attached as exhibits to, incorporated by reference, or integral to the complaint; and matters of which judicial notice may be taken." *Rhee-Karn v. Burnett*, No. 13 Civ. 6132, 2014 WL 4494126, at *3 (S.D.N.Y. Sept. 12, 2014) (citing *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993)).

## III. Discussion

### A. Truth in Lending Act Claims

Counts One and Two of the Complaint assert claims under the Truth in Lending Act ("TILA"),[3] which imposes civil liability on creditors that fail to comply with its requirements. *See* 15 U.S.C. § 1640. The provision at issue requires a creditor to provide a borrower with written notice of a mortgage's transfer or assignment within "30 days after . . . a mortgage loan is sold or otherwise transferred or assigned to a third party." 15 U.S.C § 1641(g).

A TILA action must be brought "within one year from the date of the occurrence of the violation." *Id.* §§ 1640(e). The Complaint alleges that the last transfer of Plaintiff's mortgage occurred on February 27, 2014, when JP Morgan assigned the mortgage to Bayview. (Compl. ¶ 18.) Under § 1641(g), notice of that assignment was due by March 29, 2014, and Plaintiff's claim accrued on that date. Thus, the statute of limitations on Plaintiff's claim expired on March

---

[3] The Complaint asserts that Count Two is brought under the Consumer Credit Protection Act. TILA is Title I of that Act.

29, 2015—ten months before Plaintiff filed this suit.[4] *See Le Bouteiller v. Bank of New York Mellon*, No. 14 Civ. 6013, 2015 WL 5334269, at *10 (S.D.N.Y. Sept. 11, 2015).

Plaintiff claims that he did not learn about the assignments until he received the results of his loan audit on September 8, 2015 (Dkt. No. 44 at 16), and the Complaint alleges that Defendants "concealed the transfer or assignment" of the note. (Compl. ¶ 33; *see also* Compl. ¶ 24.) The Court construes this allegation as a request for equitable tolling due to fraudulent concealment. However, "[t]o invoke fraudulent concealment, a plaintiff must allege that: (1) defendant concealed the cause of action; (2) plaintiff did not discover the cause of action until some point within five years of commencing the action; and (3) plaintiff's continuing ignorance was not attributable to lack of diligence on its part." *S.E.C. v. Wyly*, 788 F. Supp. 2d 92, 104 (S.D.N.Y. 2011). Such allegations must meet Rule 9(b)'s heightened pleading standard. *Id.*; *see also* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

Plaintiff has failed to adequately plead facts that could support equitable tolling. The Complaint's allegation of concealment is conclusory, failing to indicate what—beyond failure to comply with TILA's disclosure requirements—Defendants did to conceal the assignment. In TILA cases, "the courts have held uniformly that fraudulent conduct *beyond the nondisclosure itself* is necessary to equitably toll the running of the statute of limitations[,] . . . because if the

---

[4] The Complaint alleges that the assignment was recorded on April 11, 2015. (Compl. ¶ 18.) Plaintiff's claim accrued long before that date, however, because an assignment need not be recorded to be valid under Massachusetts law. *See U.S. Bank Nat. Ass'n v. Ibanez*, 458 Mass. 637, 654 (2011) ("A valid assignment of a mortgage gives the holder of that mortgage the statutory power to sell after a default regardless whether the assignment has been recorded."). Furthermore, as discussed *infra*, state records show that the assignment was actually recorded on April 11, *2014*—meaning that even if the act of recording started the statute-of-limitations clock, that clock ran out 30 days plus one year later, on May 11, 2015.

very nondisclosure or misrepresentation that gave rise to the TILA violation also tolled the statute of limitations, the effect of the statute of limitations would be nullified." *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 286 (S.D.N.Y. 2011) (alterations in original) (quoting *Cardiello v. The Money Store, Inc.*, No. 00 Civ. 7332, 2001 WL 604007, at *5 (S.D.N.Y. June 1, 2001)) (internal quotation marks omitted). Furthermore, JP Morgan recorded its assignment to Bayview in the appropriate Registry of Deeds on April 11, 2014—more than a year before Plaintiff filed this action. (Dkt. No. 40-4.)[5] "The recording of the assignment gave Plaintiff[] constructive notice of [the assignee's] interest in Plaintiff['s] loan." *Schultheis v. Ocwen Loan Servicing LLC*, No. 16 Civ. 1211, 2016 WL 7444888, at *6 (C.D. Cal. July 7, 2016).

Because they are time-barred, Plaintiff's TILA claims are dismissed.

### B. Fair Debt Collection Practices Act Claims

Count Three of the Complaint asserts a claim under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* The FDCPA prohibits "debt collectors" from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt" and from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. §§ 1692a, 1692e, 1692f.

The Complaint's FDCPA claim relies entirely on the allegation that Bayview was not the valid holder of Plaintiff's mortgage. The Complaint alleges that "[e]ach of [Bayview's] statements" to Plaintiff "contained false, misleading, and deceptive information" because the

---

[5] The Court takes judicial notice of Exhibit D to Defendants' motion to dismiss— the "Massachusetts Assignment of Mortgage" from JP Morgan to Bayview, as recorded in the Middlesex North Registry of Deeds on April 11, 2014. *See Thompson v. JPMorgan Chase Bank, N.A.*, No. 16 Civ. 6134, 2017 WL 897440, at *2 (N.D. Cal. Mar. 7, 2017) (taking judicial notice of documents publicly filed in the Registry of Deeds). Defendants note that the Complaint includes a typographical error that states the date of recording as "2015" instead of "2014." (*See* Dkt. No. 41 at 9; Compl. ¶ 18.) Plaintiff does not dispute that this was error.

statements "caus[ed] the Plaintiff to believe that Bayview had the ability to conduct a sale of the property when in fact [it] did not." (Compl. ¶¶ 44–45.) Similarly, the Complaint alleges that Bayview used "unfair and unconscionable means to collect or attempt to collect on a debt" because its statements "caus[ed] Plaintiff to believe that it had the right and ability to take possession of his property." (Compl. ¶ 45.)

Defendants argue that Plaintiff lacks constitutional and prudential standing to challenge the validity of the mortgage's assignment to Bayview. (Dkt. No. 41 at 9–14.) Insofar as the Complaint seeks to challenge the foreclosure proceeding itself, Defendants are correct. However, Count Three challenges Bayview's *conduct* during its foreclosure—and this claim Plaintiff does have standing to bring.

### 1. Standing To Challenge the Foreclosure

"The 'irreducible constitutional minimum' of standing in federal court requires: (1) injury in fact, (2) that is fairly traceable to a defendant's challenged conduct, and (3) that is likely to be redressed by a favorable decision." *Lopez v. Bayview Loan Servicing, LLC*, No. 16 Civ. 2610, 2017 WL 3396421, at *4 (S.D.N.Y. Aug. 8, 2017) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "[T]he injury-in-fact requirement requires a plaintiff to allege an injury that is both 'concrete and particularized.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1545 (2016) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–181 (2000)).

Borrowers do not automatically have constitutional standing to challenge the validity of their mortgage holders' assignments. In *Rajamin v. Deutsche Bank National Trust Co.*, the Second Circuit held that the borrower had no injury in fact from—and thus no standing to challenge—an allegedly invalid mortgage assignment. 757 F.3d 79, 86 (2d Cir. 2014). As here, the plaintiffs in *Rajamin* "acknowledge[d] that they took out the loans" and that they "were

7

obligated to repay them, with interest." *Id.* at 85. Likewise, the *Rajamin* plaintiffs did "not plead[] or otherwise suggest[] that they ever paid defendants more than the amounts due, or that they ever received a bill or demand from any entity other than defendants." *Id.* Although foreclosure is certainly a pecuniary injury, a borrower is injured by the *invalidity* of a mortgage assignment only if that assignment exposes her to some additional injury—for example, "imminent danger . . . of having to make duplicate loan payments." *Id.* "In other words, as long as the borrower's obligations—and exposure to collection proceedings—do not change, the borrower does not suffer injury merely because a down-the-road assignment may have been faulty." *Lopez*, 2017 WL 3396421, at *4.

As in *Rajamin*, Plaintiff in this case cannot show injury in fact from the allegedly invalid assignment of his mortgage to Bayview. Plaintiff admits that he took out a loan secured by his property (Compl. ¶ 10), and that he subsequently defaulted on his payments (Aff. ¶ 6). The terms of both the note and mortgage expressly reserve the right of the lender to transfer both the note (Dkt. No. 40-2 ¶ 1) and the mortgage (Dkt. No. 40-1 ¶ 20),[6] meaning that Plaintiff is obligated to repay his loan to, and faces the risk of foreclosure by, *someone*—even if not Bayview. The Complaint does not allege that any entity other than Bayview has attempted to collect loan payments or foreclose on Plaintiff's mortgage. Consequently, any potential harm arising from the assignment's invalidity itself, such as exposure to double foreclosure, is purely "conjectural or hypothetical." *Rajamin*, 757 F.3d at 85.

Furthermore, Plaintiff does not have prudential standing to challenge the validity of Bayview's interest in his mortgage loan to the extent that his objections arise from rights created

---

[6] The Court considers the note and mortgage, copies of which are attached as exhibits to Defendant's brief, because they are "integral to the complaint." *Rhee-Karn*, 2014 WL 4494126, at *3.

8

by agreements to which he was not party. "The 'prudential standing rule . . . normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves.'" *Rajamin*, 757 F.3d at 86 (quoting *Warth v. Seldin*, 422 U.S. 490, 509 (1975)). For example, Plaintiff could not object to the assignment by arguing that it violated any "pooling and service agreement" because as a nonparty to that contract, Plaintiff would "lack standing to assert any nonperformance of [that] contract[]." *Id.* at 88.

### 2. Standing To Seek Relief for Conduct in Violation of the FDCPA

It is now clear what Plaintiff *cannot* do. As a constitutional matter, Plaintiff has no standing to challenge Bayview's foreclosure because he suffered no injury in fact from Bayview's allegedly invalid assignment. And as a prudential matter, even if Plaintiff could challenge the validity of Bayview's assignment, he cannot do so by asserting the rights of third parties.

But Plaintiff seeks something else. He claims that Bayview engaged in unlawful debt collection practices, and he seeks damages under the FDCPA.

"To state a FDCPA claim, a plaintiff must show that: '(1) she has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.'" *Ogbon v. Beneficial Credit Servs., Inc.*, No. 10 Civ. 3760, 2011 WL 347222, at *4 (S.D.N.Y. Feb. 1, 2011) (quoting *Carrington v. Chrysler Fin.*, 10 Civ. 1024, 2010 WL 1371664, at *1 (E.D.N.Y. Apr. 5, 2010)). Although his factual allegations are far from robust, Plaintiff adequately pleads that Bayview "communicated with Plaintiff in an effort to collect on a debt it claims he owes" and that Bayview is a "debt collector" because "[t]he princip[al] purpose of

9

Bayview's business is the collection of mortgage debts."[7] (Compl. ¶¶ 40–41, 43.) Plaintiff alleges that Bayview's statements were "false, misleading, and deceptive," and that its conduct was "unfair and unconscionable," because Bayview "caus[ed] Plaintiff to believe" that it could sell his property when, in fact, it could not. (Compl. ¶ 45.)

Plaintiff has both constitutional and prudential standing to bring this claim.

First, Plaintiff has constitutional standing to assert his FDCPA claim because, unlike the plaintiffs in *Rajamin*, he has experienced a concrete injury. Even though Plaintiff is not injured by the allegedly invalid assignments, he can claim an injury from Bayview's *misrepresentation of its right to foreclose*, because abusive debt collection—even of a debt actually owed—is a harm in itself.

The difference is subtle but crucial. "[A]n alleged procedural violation can by itself manifest concrete injury where Congress conferred the procedural right to protect a plaintiff's concrete interests and where the procedural violation presents a 'risk of real harm' to that concrete interest." *Strubel v. Comenity Bank*, 842 F.3d 181, 190 (2d Cir. 2016) (quoting *Spokeo*, 136 S. Ct. at 1549). The FDCPA does just that. To protect consumers' interests, the FDCPA prohibits "[t]he false representation of . . . the . . . legal status of any debt" and "[t]he threat to take any action that cannot legally be taken." 15 U.S.C. §§ 1692e(2), (5). "[C]ourts within and outside this Circuit have consistently held that a violation of . . . § 1692e can give rise to an injury in fact" because "a materially false or misleading statement is not a 'bare procedural violation' but rather an infringement on an individual's substantive right conferred by Congress

---

[7] The Court notes that because "[c]reditors are not considered debt collectors under the FDCPA," *Springer v. U.S. Bank Nat'l Ass'n*, No. 15 Civ. 1107, 2015 WL 9462083, at *11 (S.D.N.Y. Dec. 23, 2015), Plaintiff's FDCPA claim will fail if discovery shows that Bayview owned Plaintiff's debt or was acting on behalf of the owner of Plaintiff's debt.

to receive truthful information in debt collection communications." *Taylor v. Fin. Recovery Servs., Inc.*, 252 F. Supp. 3d 344, 349 (S.D.N.Y. 2017) (quoting *Spokeo*, 136 S. Ct. at 1549); *see also Zirogiannis v. Seterus, Inc.*, 707 F. App'x 724, 727 (2d Cir. 2017) (holding that an FDCPA notice provision protects a concrete interest because it allows the consumer to "confirm that he indeed owes the debt sought by the collector and its amount before paying it").

Second, Plaintiff has prudential standing to assert his FDCPA challenge because, unlike the plaintiffs in *Rajamin*, he asserts his own legal rights. Here, too, the Complaint must be read carefully to tease out Plaintiff's claim.[8] But construed with inferences in Plaintiff's favor, the Complaint alleges the following: First, Plaintiff's note was transferred from Washington Mutual Bank to FHLM. (Compl. ¶¶ 7, 12.) The note (the document which created Plaintiff's obligation to repay his debt) "was transferred to FHLM without the mortgage" (the document that created a security interest in his property). (Compl. ¶ 12.) Plaintiff's mortgage eventually passed, without the note, to JP Morgan and then to Bayview. (Compl. ¶¶ 13–18.) When Bayview later "communicated with Plaintiff in an effort to collect" on his debt, Bayview represented that it "had the ability to conduct a sale of the property." (Compl. ¶¶ 43, 45.)

Bayview's claim was false, according to the Complaint, because Bayview "was not the holder of the note or authorized agent of the note holder." (Compl. ¶ 53.) Upon a borrower's default, Massachusetts law allows a "mortgagee" to "perform all acts authorized or required by the power of sale." Mass. Gen. Laws ch. 244, § 14. "Mortgagee," in turn, "mean[s] a mortgagee who also holds the underlying mortgage note" or "one who, although not the note holder himself,

---

[8] The Court applies a plausibility standard to Plaintiff's allegations. "Although fraud claims are subject to Rule 9(b)'s heightened pleading standard, courts in this circuit generally assess FDCPA claims under Rule 8's general pleading standard . . . ." *Beauchamp v. Fin. Recovery Servs., Inc.*, No. 10 Civ. 4864, 2011 WL 891320, at *3 n.35 (S.D.N.Y. Mar. 14, 2011). Defendants do not ask the Court to do otherwise.

acts as the authorized agent of the note holder." *Eaton v. Fed. Nat. Mortg. Ass'n*, 462 Mass. 569, 584, 586 (2012). Therefore, under Massachusetts law, "unless a foreclosing party holds both the mortgage and the underlying mortgage note" or "the foreclosing party acts as an authorized agent of the note holder," "a foreclosure by power of sale is invalid." *Galiastro v. Mortg. Elec. Registration Sys., Inc.*, 467 Mass. 160, 165 (2014); *see also U.S. Bank Nat. Ass'n v. Ibanez*, 458 Mass. 637, 647 (2011) ("Any effort to foreclose by a party lacking 'jurisdiction and authority' to carry out a foreclosure . . . is void." (quoting *Chace v. Morse*, 189 Mass. 559, 561 (1905))).

In objecting to Bayview's assertion of the authority to conduct a foreclosure, Plaintiff raises his own rights under Massachusetts state law. In this case—and unlike in *Rajamin*—the allegedly misleading or unconscionable character of Bayview's assertion of a right to foreclose turns not on an agreement to which Plaintiff is a nonparty but rather on state foreclosure law which protects borrowers' legal interests. And although Plaintiff's note and mortgage "explicitly permitted the sale of the [mortgage] together with the note," he alleges that the actual assignments were "void under [state] law because the note and the [mortgage] were not actually assigned together." *Springer v. U.S. Bank Nat'l Ass'n*, No. 15 Civ. 1107, 2015 WL 9462083, at *8 (S.D.N.Y. Dec. 23, 2015).

Thus, "[b]ecause [Plaintiff] pleads that the defendants initiated an improper non-judicial foreclosure," the Court concludes that he "has shown the requisite injury for Article III standing" and prudential standing to bring a claim under the FDCPA. *Id.* at *7. The Court accordingly denies Defendants' motion to dismiss Plaintiff's FDCPA claim.

### C. Massachusetts Claims

Count Four of the Complaint alleges that Bayview violated several Massachusetts statutes that regulate lenders' communications with and notice to borrowers before foreclosure. *See* Mass. Gen. Laws ch. 244, §§ 14, 35A, 35B, 35C.

Defendants argue that these state-law claims are preempted by federal law because regulations promulgated pursuant to the Home Owners' Loan Act ("HOLA") "occup[y] the entire field of lending regulation for federal savings associations." 12 C.F.R. § 560.2(a). Section 560.2 explains that "the types of state laws preempted" include those regulating "[t]he terms of credit, including . . . adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable," *id.* § 560.2(b)(4), and the "servicing, sale or purchase of, or investment or participation in, mortgages," *id.* § 560.2(b)(10).

Plaintiff has failed to respond to Defendants' preemption argument. He has conceded that Washington Mutual Bank was a federally chartered savings association at the time it originated Plaintiff's loan, *see, e.g.*, *Yeomalakis v. F.D.I.C.*, 562 F.3d 56, 58 (1st Cir. 2009), and that HOLA preemption followed the loan as it passed to different assignees, *see Foley v. Wells Fargo Bank, N.A.*, 13 Civ. 12107, 2013 WL 6489976, at *6 (D. Mass. Dec. 9, 2013), *vacated in part on other grounds*, 772 F.3d 63 (1st Cir. 2014). (*See* Dkt. No. 41 at 19–20.) Furthermore, Plaintiff fails to offer any reason or basis for the Court to reject Defendants' argument that HOLA regulations preempt all of Plaintiff's state-law claims.[9]

---

[9] The Court notes that § 560.2 does not preempt state real-property laws "to the extent that they only incidentally affect the lending operations of Federal savings associations." 12 C.F.R. § 560.2(c). However, without the benefit of more detailed allegations in the Complaint or a responsive argument in Plaintiff's briefing, the Court cannot conclude that Plaintiff's allegations arise under Massachusetts statutes that avoid HOLA's preemptive scope. *See Foley*, 2013 WL 6489976, at *6 (holding that HOLA preempts §§ 35A and 35B); *see also Copeland-Turner v. Wells Fargo Bank*, 800 F. Supp. 2d 1132, 1141 (D. Or. 2011) (holding that HOLA preempts "'disclosure-document' foreclosure claims"); *Stefan v. Wachovia*, 09 Civ. 2252, 2009 WL 4730904, at *3 (N.D. Cal. Dec. 7, 2009) (holding that the plaintiff's "state law claims [fell] within the purview of section 560.2(b)" because they challenged the defendant's "initiation of the state foreclosure process").

Because Plaintiff fails to respond to Defendant's preemption argument, he has waived his state-law claims. The Court grants Defendants' motion to dismiss Plaintiff's claims under Massachusetts law.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss the Second Amended Complaint is GRANTED in part and DENIED in part. Defendants shall file answers to the remaining claim within fourteen days of the date of this order.

The Clerk of Court is directed to close the motion at Docket Number 39.

SO ORDERED.

Dated: February 12, 2018
      New York, New York

_____
J. PAUL OETKEN
United States District Judge